UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO 07-80767-CIV-MARRA/JOHNSON

FEDERAL INSURANCE COMPANY,
an Indiana Corporation,

    Plaintiff,

v.

BONDED LIGHTNING PROTECTION
SYSTEMS, INC., a Florida Corporation,

    Defendants.
_____/

**ORDER AND OPINION ON MOTION TO DISMISS COUNTS II AND IV
AND MOTION TO TRANSFER VENUE**

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Counts II and IV of Plaintiff's Complaint, Motion for Transfer of Venue Pursuant to Local Rule 3.1(H) (DE 14). Plaintiff filed a response in opposition. (DE 17). The Court has carefully considered the motion and response, and is otherwise fully advised in the premises.

**Background**

On July 15, 2008, Plaintiff Federal Insurance Company ("Plaintiff") filed its Complaint against Defendant Bonded Lightning Protection Systems, Inc. ("Defendant"). (DE 1). The Plaintiff, as subrogee of its insureds, William and Ida Pencer and 123 LLC, seeks damages based upon negligence, products liability, breach of contract, and breach of warranties.

The facts, as alleged in the Complaint, are as follows: The incident which forms the basis of this lawsuit occurred on July 21, 2007 at a property known as Casa Amado, owned by William

1

and Ida Pencer, located at 455 North County Road, Palm Beach, Florida. ("Casa Amado") (Compl. ¶ 3). Plaintiff insured the Casa Amado property under a policy of insurance issued to the Pencers. (Compl. ¶ 5). The policy provided coverage for damage to Casa Amado in the event of fire. (Compl. ¶ 5).

Defendant is in the business of the design, supply, and installation of lightning protection systems (hereinafter "LPS"). (Compl. ¶ 6). Defendant designed, supplied, and installed an LPS at Casa Amado prior to July 21, 2007. (Compl. ¶ 6). The damages sought in the Complaint arose from the failure of the LPS at Casa Amado on July 21, 2007. (Compl. ¶ 7).

Casa Amado was undergoing renovations on July 21, 2007, and the renovation work had been underway for a substantial period of time prior to this date. (Compl. ¶ 12). The Pencers retained J.F. Brennan Design Build, L.C. ("Brennan") to complete the Casa Amado Work. (Compl. ¶ 13). As part of the Casa Amado renovation work, Brennan contacted Defendant in order to design, supply, and install an LPS at the Casa Amado property. (Compl. ¶ 14). Defendant entered into a contract with Brennan, which included an agreement to "'. . . furnish and install a complete and adequate Lightning Protection and/or Grounding System for the above Referenced Project [455 North County Road] in strict compliance with the Job Specifications, and all Related Plans and the Code Requirements as set forth by the Underwriters' Laboratories, Inc., U.L. 96A latest edition and the National Fire Protection Association, NFPA No. 780 latest edition. . . '". (Compl. ¶ 15). The contract was approved and signed by representatives of Defendant and Brennan on September 13, 2005. (Compl. ¶ 15).

Defendant thereafter undertook to design, supply and install an LPS at Casa Amado. (Compl. ¶ 16). Defendant was paid for the work performed by it at Casa Amado. (Compl. ¶ 17).

Defendant improperly designed, supplied, and installed the LPS at Casa Amado. (Compl. ¶ 18). The failure of Defendant to install properly the LPS also included, but was not limited to, installation of the LPS in violation of the requirements of NFPA 780. (Compl. ¶ 19). The failure of Defendant to design and install properly the LPS exposed Casa Amado to damage due to lightning strikes, viz, fire and damages as a result thereof. (Compl. ¶ 20). The failure of Defendant to design and install properly the LPS also rendered the LPS incapable of performing the purpose for which it was intended, i.e., the protection of Casa Amado from lightning strikes and fire damage. (Compl. ¶ 21).

The Casa Amado property was hit by a lightning strike on July 21, 2007. (Compl. ¶ 22). The LPS designed, supplied, and installed by Defendant failed to deflect this lightning strike to ground and prevent the subsequent fire and damage to the Casa Amado structure and contents because of its improper design and installation. (Compl. ¶ 23). The failure of the LPS to deflect the lightning to ground resulted in the electric current running throughout the Casa Amado property, which quickly ignited wood framing and other combustible material, and the resulting fire substantially damaged the property. (Compl. ¶ 24).

The Pencers submitted a claim to Plaintiff for the property damage sustained at Casa Amado following the July 21, 2007 lightning strike. (Compl. ¶ 25). Plaintiff paid for certain of the property damage sustained by the Pencers as a result of the lightning strikes and subsequent fire and damage at Casa Amado pursuant to the insurance policy Plaintiff issued to the Pencers. (Compl. ¶ 26). Plaintiff completed the adjustment of the claim under the insurance policy, and it paid $9,310,879 for the damage. (Compl. ¶ 27).

Defendant moves to dismiss Counts II and IV of the Amended Complaint. Defendant claims that Count II (strict products liability) should be dismissed as Florida law recognizes that principles of strict liability apply to products, and is not applicable to structural improvements to real property. Defendant asserts that Count IV (breach of warranties) should be dismissed because that count encompasses numerous causes of action within a single count to which the Defendant cannot adequately and sufficiently formulate a response. Additionally, Defendant argues that Plaintiff failed to allege an essential element of any breach of warranty under Florida law, to wit, privity between the Plaintiff and/or its insureds and the Defendant.

Plaintiffs respond that its strict products liability and breach of warranty claims are supported by the facts alleged within the Complaint. Plaintiff also improperly attaches numerous documents to its opposition which it seeks to rely upon as "additional facts" which establish that Plaintiff has asserted valid strict products liability and breach of warranty claims and which purport to establish genuine issues of material fact.

**Standard of Review**

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). When

considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**Discussion**

*Plaintiff's Attachments and Exhibits to its Response*

First, the Court addresses the numerous attachments Plaintiff submitted in support of its memorandum in opposition to Defendant's motion to dismiss. Plaintiff seeks to rely upon these documents as "additional facts" which establish that Plaintiff has asserted valid strict products liability and breach of warranty claims and which establish genuine issues of material fact.

Ordinarily, a court does not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997). "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998).

Materials not submitted as part of the complaint can be considered as part of a Rule 12(b)(6) motion in certain circumstances. First, documents not physically attached to the complaint may be considered by the court if: (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim and (3) its authenticity is not challenged. Fetterhoff v. Liberty Life Assur. Co., 282 Fed. Appx. 740, 743 n.1 (11th Cir. 2008); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997). Second, extraneous materials may also be used to clarify allegations in the complaint whose meaning is unclear.

Pegram v. Herdrich, 530 U.S. 211, 230 n. 10 (2000).  Finally, "new" facts should be considered in deciding whether to grant leave to amend and whether to dismiss with or without prejudice. Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc., 268 F.3d 1133, 1137 (9th Cir. 2001).

    The complaint in this case contained no reference to the supporting materials (apart from the exhibits already attached to the complaint), nor do the supporting materials clarify ambiguous allegations.  Rather, Plaintiff seeks to rely on them in opposing Defendants' motion to dismiss-a motion attacking the sufficiency of the pleadings. Plaintiff harbors the erroneous notion that including extraneous materials in opposition to Defendants' motion forces the Court to treat the motion as one for summary judgment. See Pl.'s Opp. 6 ("The additional facts presented by the Plaintiff in opposition to Defendant's Motion to Dismiss establish genuine issues of material fact with respect to Plaintiff's strict products liability and breach of warranty claims.").

    Plaintiff's position can be summarized thusly: the Court has discretion to consider extrinsic evidence and convert the motion to one for summary judgment; if treated as responding to a motion for summary judgment, the supporting materials were properly submitted. (Pl.'s Opp. 5-6.) Plaintiff then utilizes the supporting materials to reargue its position on the underlying motion to dismiss. (See id. 6-12.) Plaintiff does not provide any support for its fundamental assumption that a non-moving party can convert a motion to dismiss into a motion for summary judgment by including extraneous material in its response. Defendants' motion to dismiss refers only to the allegations contained in the complaint, and does not refer to anything outside of the pleadings.  The Court sees no reason to consider the supporting materials, nor to convert Defendants' motion into one for summary judgment. See, e.g., Ranch Realty, Inc. v. DC Ranch Realty, LLC, 2007 WL 3207469, *2-3 (D. Ariz. 2007) (holding that Plaintiff cannot convert

motion to dismiss to motion for summary judgment by including extraneous material in its response and declining to consider Plaintiff's supporting materials).

The Court will therefore exclude the supporting materials presented and maintain Defendants' motion as a 12(b)(6) motion to dismiss for failure to state a claim.

***Strict Products Liability (Count II)***

The Complaint alleges that the "LPS designed, supplied, and installed by the Defendant at the Casa Amado property was not reasonably safe in design or installation." (Comp. ¶ 36). Defendant argues that the doctrine of strict liability does not apply to structural improvements to real property and that the LPS is not a product, but was a structural improvement to Casa Amado. Accordingly, Defendant claims, the doctrine of strict liability does not apply to Defendant in this case. (Mot. 4-5). Plaintiff counters that it has validly asserted strict products liability claims in connection with the LPS because the LPS is a product within the scope of the strict products liability doctrine. (Opp. 6-8).

In West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), the Florida Supreme Court adopted the doctrine of strict liability as set forth in section 402A of the American Law Institute Restatement (Second) of Torts. As summarized by the court, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." West, 336 So.2d at 86 (emphasis added). This doctrine has since been expanded "to others in the distributive chain including retailers, wholesalers, and distributors." Plaza v. Fisher Development, Inc., 971 So.2d 918, 920 (Fla.3d DCA 2007), quoting Samuel Friedland Family Enters. v. Amoroso, 630 So.2d 1067, 1068 (Fla. 1994).

Florida courts have expressly declined to extend the principle of strict liability to structural improvements to real estate. See Easterday v. Masiello, 518 So.2d 260, 261 (Fla. 1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); Neumann v. Davis Water and Waste, Inc., 433 So.2d 559, 560 (Fla.2d DCA 1983), review denied, 441 So.2d 632 (Fla.1983) (affirming trial court's dismissal of a claim with prejudice "predicated on strict liability of [defendant] as the installer or assembler of a defective product, the treatment tank, on real estate as an integral part of the sewage facility in question").

In Pamperin v. Interlake Companies, Inc., 634 So.2d 1137 (Fla. 1st DCA 1994), the court collected the line of Florida cases holding that structural improvements to real property are not generally considered products for purposes of products liability actions. Easterday v. Masiello, 518 So.2d 260 (Fla.1988) (jail facility); Seitz v. Zac Smith & Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987) (floodlight tower); Craft v. Wet 'N Wild, Inc., 489 So.2d 1221 (Fla. 5th DCA 1986) (amusement park water slide); Neumann, 433 So.2d 559 (sewage treatment tank); and Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla.1986) (public road).  The Pamperin court, relying on expert witness testimony that, "storage rack systems can be, and are, disassembled and resold and are not permanent improvements to real property," held that the storage rack system at issue in that case was a product for purposes of strict liability.  Id. at 1140.

There are several factors Florida courts consider when determining whether something is a product or a structural improvement to real property for purposes of products liability actions. These factors include, but are not limited to, whether a structure can be disassembled and resold (Pamperin); whether it adds value to property (usually real estate) or ameliorates its condition,

8

whether it is intended to enhance its value, beauty or utility (Plaza); whether it is available for purchase in the sense that it is offered in the stream of commerce (Chadbourne, Easterday). Additionally, Florida law recognizes an exception to the rule that strict liability does not apply to improvements to real property, i.e., "where the injuries result not from the real property as improved by the alleged defective product but directly from a defective product manufactured by defendant, which product may have itself been incorporated into the improvement of the realty before the injury from the product occurred." Jackson v. L.A.W. Contracting Corp., 481 So.2d 1290, 1292 (Fla. 5th DCA 1986); Craft v. Wet 'N Wild, Inc., 489 So.2d 1221, 1222 (Fla. 5th DCA 1986).

    Defendant argues that the Court should dismiss the strict products liability claim because the LPS at issue is a structural improvement to real property not subject to strict products liability. Defendant's assertions regarding the qualities and characteristics of the LPS are fact-driven and outside of the four corners of the Complaint, making the issue more appropriate for summary judgment or trial. Plaintiff counters in its opposition to the motion to dismiss that it has validly asserted strict products liability claims in connection with the LPS because the LPS is a product within the scope of the strict products liability doctrine. (Opp. 6-8). However, Plaintiff has not alleged in the Complaint that the LPS is a product within the scope of the strict products liability doctrine. Therefore, the Court grants Defendant's motion to dismiss Count II . Count II is hereby dismissed, without prejudice, with leave to amend in accordance with this Order.

***Breach of Warranties (Count IV)***

    The Complaint alleges, in pertinent part, under Count IV, "Breach of Warranties,"

> 50. The design supply, and installation of the LPS at the Casa Amado property was subject to warranties, including warranties of merchantability and fitness for a particular purpose.
> 51. Defendant breached the warranty attended to the design, supply and installation of the LPS when it failed to meet the express purpose for which it was intended, i.e., the protection of the Casa Amado property from damage in the event of a lighting strike.
> 52. Defendant breached the implied warranties of merchantability and fitness for a particular purpose when it designed, supplied, and installed a LPS at the Casa Amado property which was inadequate and defective.
> 53. Defendant's breaches of warranties caused the damages at the Casa Amado property.

Defendant moves to dismiss the breach of warranties count on the grounds that (1) it pleads multiple causes of action in one count; (2) it is ambiguous as to which warranties were allegedly breached; and (3) it does not plead privity between Plaintiff and/or its insureds and Defendant.

This Court recently addressed the issue of pleading multiple causes of action into one count of a complaint in <u>Green v. C.B. Fleet Holding Co. Inc.</u>, 2008 WL 113668 (S.D. Fla. 2008). In that case, just as in the instant case, the plaintiff relied on Fed. R. Civ. P. 8(d)(2) for her position that she was permitted under the rules to plead multiple causes of action into one count:

> . . . the issue is whether a party can plead two separate causes of action in one count of a complaint. Plaintiff cites Rule 8(d)(2) of the Federal Rules to support her construction of the complaint. That rule states that a "party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Plaintiff interprets the plain language of this rule to allow her to plead both fraud and negligent misrepresentation in the same count.
>
> However, Plaintiff's interpretation of the rule collides with the requirement of Rule 10(b), which states, in pertinent part: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or

> defense." Fed. R. Civ. P. 10(b). The Eleventh Circuit has interpreted the analogous language of Rule 10(b) prior to the December 1, 2007, amendments as requiring separate counts for each claim of relief. Anderson v. District Board of Trustees of Central Florida Community College, 77 F.3d 364, 366 (11th Cir. 1996). [Defendant] is correct that the Amended Complaint has not been drafted in the clearest, most precise manner. However, the proper remedy is not a Rule 12(b)(6) motion to dismiss. Instead, [Defendant] should have moved for a more definite statement under Rule 12(e). "Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." Anderson, 77 F.3d at 366.

Green, 2008 WL 113668 at *2.  Here, just as in Green, the appropriate remedy for pleading multiple causes of action in one count is not a motion to dismiss for failure to state a claim, but a motion for more definite statement under Rule 12(e).  Nevertheless, to effectuate total clarity in the pleadings, Plaintiff shall amend the Complaint to assert Count IV as separate counts, for each type of alleged warranty breached.

As to the issue of privity, Florida law is unequivocal.  "[I]n order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant. Weiss v. Johansen, 898 So.2d 1009, 1012 (Fla. 4th DCA 2005).  As the court explained in T.W.M. v. Am. Med. Sys., Inc., 886 F.Supp. 842, 844 (N.D. Fla.1995),

> The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant. Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976). "Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties." Intergraph Corp. v. Stearman, 555 So.2d 1282, 1283 (Fla. 2d DCA 1990). "A warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity." Elizabeth N. v. Riverside Group, Inc., 585 So.2d 376, 378 (Fla. 1st DCA 1991). See also Spolski General Contractor, Inc. v. Jett-Aire Corp. Aviation Management of Central Fla., Inc., 637 So.2d 968, 970 (Fla. 5th DCA 1994).

It is undisputed that Plaintiff did not plead in the Complaint privity between Plaintiff (and/or its insureds) and Defendant.  Rather, the Complaint alleges that "Defendant entered into a contract with Brennan," the general contractor. (Compl. ¶ 15).  Nonetheless, Plaintiff argues in its opposition to the motion to dismiss that privity exists in this case based upon additional documents and exhibits, which the Court will not consider in ruling on the motion to dismiss. (Opp. 9-12).

Plaintiff also argues that the breach of warranty claims are not defeated because privity exists here between Defendant and Plaintiff's insureds' representative and agent, Brennan. (Opp. 10).   See Beverage Canners, Inc. v. E. D. Green Corp., 291 So.2d 193 (Fla. 1974) (genuine issue of fact as to whether privity existed based on affidavit stating that contracting buyer was agent for party asserting breach of warranty claim).  However, the Complaint does not allege that Brennan, the contracting party, was the agent of Plaintiff's insureds with regard to the contract between Brennan and the Defendant.  Thus, Plaintiff's argument is inapposite.

Finally, Plaintiff asserts in a footnote that the breach of warranty claims arising out of the contract between Defendant and Brennan (the general contractor) are valid in the absence of direct privity because of the third party beneficiary status of Plaintiff's insureds under the contract between Defendant and Brennan. (Opp. 11 n. 5). See Warren v. Monahan Beaches Jewelry Center, Inc., 548 So.2d 870, 872 (Fla. 1st DCA 1989) ("As to breach of contract, the law is that a person not party to a contract may sue for breach of contract where the parties' dealings clearly express the parties' intent to create a right primarily and directly benefitting a third party."), citing Restatement (Second) of Contracts, Section 302(1)(b) (1979). One of the required elements to plead a cause of action for breach of a third party beneficiary contract is "an intent,

either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party." Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd. 647 So.2d 1028, 1031 (Fla. 4th DCA 1994) ("A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."). Here, the Complaint failed to allege that both Brennan and Defendant intended that the Plaintiff's insureds benefit from their contract. Accordingly, the Complaint fails to plead breach of warranty as a third party beneficiary of a contract. Id.; Jacobson v. Heritage Quality Const. Co., Inc., 604 So.2d 17, 18 (Fla. 4th DCA 1992).

In conclusion, the Complaint fails to state a claim under Count IV, "Breach of Warranties." Count IV is hereby dismissed, without prejudice, with leave to amend in accordance with this Order..

*Motion to Transfer Venue*

Defendant's Motion to transfer the instant action to the West Palm Beach Division of the Southern District of Florida is **DENIED AS MOOT**. The action is already proceeding in the West Palm Beach Division of the Southern District of Florida.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Counts II and IV of Plaintiff's Complaint, Motion for Transfer of Venue Pursuant to Local Rule 3.1(H) (DE 14) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's motion to dismiss Count II (Strict Products Liability), is **GRANTED.**

2. Defendant's motion to dismiss Count IV (Breach of Warranties) is **GRANTED.**

3. Plaintiff has twenty (20) days to amend its complaint in accordance with this Order.

4.  Defendant's Motion to transfer the instant action to the West Palm Beach Division of the Southern District of Florida is **DENIED AS MOOT**.  The action is already proceeding in the West Palm Beach Division of the Southern District of Florida.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 2nd day of December, 2008.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record